IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DANIEL LEE PAULLEY            :

    v.                        :
                                                    CIVIL ACTION NO.: WDQ-11-1889
MICHAEL J. ASTRUE,            :
COMMISSIONER OF SOCIAL
SECURITY                      :

## REPORT AND RECOMMENDATION

Daniel Lee Paulley,(sometimes referred to as "Mr. Paulley", "Plaintiff" or "Claimant") filed this action seeking judicial review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  Pending is the Defendant's Motion for Summary Judgment.[1]  (ECF Nos. 12).  Pursuant to 28 U.S.C. § 636(c) and Local Rule 301, this case was referred to me to issue a Report and Recommendation.  (ECF No. 13).  For the reasons that follow, it is recommended that the Commissioner's decision be AFFIRMED. No hearing is necessary. Local Rule 105.6.

---

[1] On September 22, 2011, a scheduling order was entered. (ECF No. 11).  The Plaintiff's Motion for Summary Judgment was due November 22, 2011.  As of the date of this Report and Recommendation Plaintiff has not filed a Motion for Summary Judgment, nor has he filed a memorandum in opposition to the Defendant's motion, and the time to respond has passed. See Local Rule 105.2.a (D.Md.2011).  However, the Court is required to review the ALJ's conclusions and determine whether they are legally correct. *See Meyers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980).

**I.   PROCEDURAL HISTORY**

Mr. Paulley filed applications for DIB and SSI on August 3, 2007, and August 10, 2007, respectively, alleging disability due to arthritis, emphysema, and carpal tunnel syndrome. (Tr. 131). His claims were denied initially, and upon reconsideration. (Tr. 59-71).  After a hearing held before an Administrative Law Judge ("ALJ") on October 28, 2008, the ALJ issued a decision denying his claims for benefits. (Tr. 10-19).  Claimant filed a request for review, which the Appeals Council denied on June 13, 2011. (Tr. 1-5).  Claimant, acting *pro se,* then filed a civil action with this Court.

**II. ALJ'S DECISION**

The ALJ evaluated Mr. Paulley's claims for DIB and SSI using the five-step sequential process set forth in 20 C.F.R. §§ 404.1520, 416.920.  At step one, the ALJ found that the Claimant had not engaged in any substantial gainful activity since his alleged onset date, January 15, 2005. (Tr. 12). At step two, the ALJ found that the Claimant's degenerative disc disease of the spine and arthritis were severe impairments, insofar as they caused significant vocationally relevant limitations. (Id.). At step three, the ALJ found that the Claimant did not have an impairment or combination of impairments that met, or equaled in severity, a listed impairment. (Tr. 13).  At step four, the ALJ assessed Mr. Paulley's residual functional capacity ("RFC") and found that he retained the ability to perform light work.  The

2

ALJ determined that he was precluded from performing his past relevant work ("PRW"), which was heavy work, such as a sheet metal operator, construction worker, and furniture mover. (Tr. 17). At the fifth and final step, the burden shifts to the Commissioner to show that there are other jobs existing in significant numbers within the economy which Mr. Paulley could perform consistent with his RFC, age, education and work experience. A Vocational Expert ("VE"), Dr. Adina Leviton, testified that a hypothetical person of the age, educational background, and past work experience of Mr. Paulley, who had certain nonexertional limitations,[1] could perform light work. The VE further testified that jobs existed in significant numbers in both the local and national economies which such a person could perform. (Tr. 46-51). Accordingly, the ALJ determined that the Claimant was not disabled. (Tr. 19).

### III. STANDARD OF REVIEW

The Commissioner's decision must be upheld if supported by substantial evidence, which is more than a scintilla, but less than a preponderance, and sufficient to support a conclusion in a reasonable mind. *See* 42 U.S.C. §405(g) (1998); *see also King v. Califano*, 599 F.2d 597 (4th Cir. 1979); *Teague v. Califano*,

---

[1] The ALJ asked the VE to assume that such a hypothetical person was limited to simple, routine tasks and required a sit-stand option. (Tr. 46).

560 F.2d 615 (4th Cir. 1977); *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966). This Court may not weigh conflicting evidence, determine credibility, or substitute its judgment for the Commissioner's. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Although deferential, this standard of review does not require acceptance of a determination by the Commissioner which applies an improper standard, or misapplies the law. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Following its review, this Court may affirm, modify or reverse the Commissioner, with or without a remand. *See* 42 U.S.C.§405(g); *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

## IV. DISCUSSION

As noted previously, the Claimant has not presented any arguments in support of his contention that the ALJ erred. (ECF No. 1). Regardless, after careful review of the Commissioner's final decision and the entire record, I recommend that the Court find that the ALJ's decision is supported by substantial evidence.

Claimant alleged that he was disabled due to emphaseyma, arthritis and carpal tunnel syndrome. (Tr. 131). The record contains evidence from several sources: Edward McCready Memorial Hospital; John D. Whitaker, M.D.; Peninsula Regional Medical Center; Johns Hopkins Bayview Medical Center; William Barrish M.D.; S. Brahim, M.D.; J. Biddison M.D.; and Ability Rehab

Associates.  The majority of Claimant's medical records consist of emergency room records.

Mr. Paulley visited the emergency room in March 2005, when he reported lower back, left hip, and buttocks pain after he fell down four steps the prior day. (Tr. 321, 324).  The attending physician diagnosed low back pain and contusion. (Tr. 323). Mr. Paulley returned to the emergency room the following month, when he reported back and leg pain after he fell down six attic steps two days earlier. (Tr. 222, 224).  The attending physician diagnosed lower back pain and prescribed Tylox 5, a narcotic pain reliever, and Flexeril, a muscle relaxant. (Tr. 225-26). Mr. Paulley returned to the emergency room four months later, reporting low back and right leg pain due to a work-related injury. (Tr. 278).  During a physical examination, Mr. Paulley had normal strength, tone, and sensation. (Tr. 279). Mr. Paulley reported pain during range of motion testing of the back and hip, and he had local muscle spasm/tenderness in the right lower back. (Tr. 279).  A straight leg raise test was negative (Tr. 279). The attending physician diagnosed back pain, local injury affecting the lower back, right hip pain, and lumbar radiculopathy/sciatica. (Tr. 279).  An x-ray of Mr. Paulley's lumbar spine showed grade II anterolisthesis of L5 with respect to S1 vertebrae.(Tr. 277, 284).

Mr. Paulley returned to the emergency room in June 2006, reporting right hip and thigh pain that began two days earlier. (Tr. 316). He informed the attending physician that he worked as a furniture mover and that he walked two miles per day to work. (Tr. 318). Mr. Paulley denied any traumatic event, and he denied any back pain, stating that he was taking no medications at the time. (Tr. 318). Apart from tenderness in the right hip and knee, a physical examination was unremarkable. (Tr. 319). The attending physician stated that x-rays of the right hip and knee showed no current injury. (Tr. 286, 319). Nevertheless, the attending physician prescribed a narcotic pain reliever. (Tr. 319). Mr. Paulley returned to the emergency room three months later, when he reported back pain that began three days earlier at work. (Tr. 313). He informed the attending physician that he worked as a furniture mover. (Tr. 313). The attending physician observed tenderness to palpation in the right shoulder. (Tr. 314). Mr. Paulley reported pain during lateral bending and flexion, he had a steady gait and was able to toe and heel walk, and had normal reflexes (Tr. 314). The attending physician again prescribed a narcotic pain reliever.(Id.).

Since January 2007, Mr. Paulley has received treatment for neck and shoulder pain from John Whitaker, M.D., his primary care physician (Tr. 250-57, 348-53, 374-77). Mr. Paulley informed Dr. Whitaker that he injured his neck and shoulder when

6

he fell at Subway restaurant and hit his neck against the base of a toilet bowl. (Tr. 256). An x-ray of the right shoulder and scapula were normal. (Tr. 245). An x-ray of the chest was equivocal for chronic obstructive pulmonary disease("COPD"). (Tr. 245). An x-ray of the cervical spine showed straightening consistent with muscle spasm. (Tr. 246). Following this injury, Mr. Paulley was scheduled for several months of physical therapy (Tr. 228-44). At the initial session, the physical therapist stated that Paulley's prognosis was "good, but will be dependent on [patient] motivation and compliance." (Tr. 229). Although Mr. Paulley attended one follow-up session (Tr. 235), he did not show up at seven subsequent appointments. (Tr. 236-43). He then was discharged from physical therapy due to noncompliance. (Tr. 244). At subsequent sessions with Dr. Whitaker, Mr. Paulley generally reported at least 6-8/10 pain, and sometimes 10/10 pain. (Tr. 253, 255, 349). An MRI of the cervical spine in February 2007 showed a herniated disk at C5-6 resulting in mass effect upon the subarachnoid space and compromising the exiting C6-7 nerve root. (Tr. 247). Dr. Whitaker's physical examinations generally showed tenderness and pain in the neck and shoulders, and pain during range of motion testing. (Tr. 253, 255, 257, 351, 353, 375, 377). He prescribed medication, including a narcotic pain reliever, to treat Mr. Paulley's symptoms. (Tr. 252, 254, 256, 350, 352, 374).

The record reflects that Dr. Skolka, a pain management specialist, treated Claimant at the Peninsula Regional Medical Center. Dr. Skolka reported, in a conclusory fashion, that Mr. Paulley could never lift more than ten pounds, could never stoop, crouch, crawl, kneel, crawl, push, or pull and was unable to work. Notably, his report does not provide any medical findings to support these limitations. (Tr. 380). Not surprisingly, the ALJ afforded Dr. Skolka's conclusory findings less weight than they would have been entitled to if they had been supported by specific medical findings.

From my review of the record, I recommend that the Court find that the ALJ's decision to afford Dr. Skolka's opinion less than controlling weight was proper. In determining Mr. Paulley's RFC, the ALJ found only certain limitations to be credible. For example, the ALJ did not adopt Dr. Skolka's opinion that Mr. Paulley could not work. (Tr. 15, 120). Nor did the ALJ adopt Dr. Skolka's opinion that Mr. Paulley could never stoop, crouch, crawl, kneel, crawl, or push/pull and that he had to lie down 4 hours a day. (Tr. 380-381). Instead, the ALJ determined that Mr. Paulley's ability to lift was limited to a range of light work and his ability to stand was limited, requiring work that allowed a sit/stand option. (Tr. 13).

The ALJ did, however, accord some weight to the report from the consultative examining physician, Dr. William Barrish.[2] In determining Mr. Paulley's RFC, the ALJ also considered the Residual Functional Capacity Assessments ("RFCA") completed by the State Agency Examiners, Dr. Brahim and Dr. Biddision, (Exhibits 6F & 12F). Both RFCA's noted that Mr. Paulley was able to sit and stand for only about 6 hours during a workday. (Tr. 339, 360). As the ALJ is required only to accept conclusions supported by the evidence, he properly rejected Dr. Skolka's opinion that Claimant had to lie down for 3-4 hours in an 8 hour workday. In sum, the ALJ's decision was sufficiently specific to allow the Court to determine the basis for affording the treating physician's opinion that Mr. Paulley could not work little weight, and the ALJ's determination was supported by substantial evidence.

Claimant also alleged that, due to his constant pain and body aches, he was not able to work. (Tr. 31). The ALJ

---

[2] William Barrish, M.D., performed a physical examination of Claimant in November 2007, at the request of the state agency (Tr. 325-30). Mr. Paulley reported "severe pain with essentially all movement and all activities including sitting, standing, lying flat, and walking" (Tr. 326). Dr. Barrish reported that Mr. Paulley gave a "poor effort with manual muscle testing in all muscles tested of the upper and lower extremities." (Tr. 327). Dr. Barrish observed tenderness in Claimant's neck and lower back, and noted his range of motion testing in the back was "restricted secondary to guarding and pain," and range of motion testing in the neck was "significantly restricted secondary to guarding and pain." (Tr. 327).

recognized his obligation to give consideration to all of Mr. Paulley's subjective allegations in accordance with Social Security Ruling ("SSR") 96-7p.[4] (Tr. 15-17). The ALJ stated that he found Claimant's statements regarding his impairments and their impact on his ability to work were credible, but only to the extent consistent with the residual functional capacity assessment. (Tr. 16).  Importantly, the ALJ's analysis did not end there.  Rather, the ALJ stated that his finding was based, among other things, on the Claimant's statements to his own health care providers about his pain levels and his reports of daily activities, and discrepancies found between the Claimant's assertions and the information contained in the documentary reports, which included the MRI of his cervical spine, the findings of negative straight leg raises by the examining physician, and Mr. Paulley's poor effort. (Tr. 15-16, 286, 371).

---

[4] SSR 96-7p, in relevant part, states: "in addition to the objective medical evidence, when assessing the credibility of an individual's statements the ALJ must consider: 1. The individual's daily activities; 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms."

The reports of the treating and examining physicians also were discussed sufficiently in the ALJ's decision.  The ALJ also noted that Mr. Paulley started taking pain medication including, MS Contin, Percocet, Neurontin, and Ambien and that in march 2008 he had only limited success with epidural steroid injections. (Tr. 15).

After carefully reviewing all the medical records, I have determined that the ALJ's findings are substantially supported by the evidence of record.  In sum, the ALJ's finding that the Claimant's statements regarding his pain and its effect on his ability to work were not entirely credible is supported by substantial evidence, and is in compliance with SSR 96-7p.

## V. CONCLUSION

For the foregoing reasons, there was no error associated with the ALJ's findings and Opinion it is respectfully recommended that upon expiration of the time to take exception to this Report and Recommendation, the Court enter an Order **GRANTING** Defendant's Motion for Summary Judgment.


DATED: __9/18/12__             _____/s/_____
                               Paul W. Grimm
                               United States Magistrate Judge

11